IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BRODERICK LEVAR MCCOY**                                          **PLAINTIFF**

v.                                  **CIVIL ACTION NO. 1:13-cv-515-KS-MTP**

**DR. RONALD WOODALL, ET AL.**                                **DEFENDANTS**

<u>**REPORT AND RECOMMENDATION**</u>

THIS MATTER is before the Court on the Motion for Summary Judgment [51] filed by Defendant Ronald King and the Motion for Summary Judgment [54] filed by Defendant Dr. Ronald Woodall.  Having considered the Motions [51] [54], the record, and the applicable law, the Court finds that the Motions [51] [54] should be granted and this action should be dismissed with prejudice.

**BACKGROUND**

On February 27, 2013, Plaintiff Broderick Levar McCoy, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983.  The allegations in Plaintiff's complaint occurred while he was a post-conviction inmate at South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi.  In his complaint and as clarified in his testimony at the *Spears*[1] hearing, Plaintiff asserts claims against Defendants Ronald King and Dr. Ronald Woodall.[2]  Plaintiff alleges that Defendant King failed to properly train his subordinates, which allowed Plaintiff to suffer a vicious attack at the hands of another inmate.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[2] Plaintiff also asserted claims against Keldric Clark, Milton Martin, L.C. Williams, Jalisa Franks, Vander Brewer, and Nia Enhlers.  These Defendants, however, were previously dismissed from this action. *See* Order [12]; Omnibus Order [46]; Order [60].

Plaintiff alleges that Defendant Dr. Woodall denied him adequate medical treatment for the injuries he suffered during the attack.

According to Plaintiff, on the evening of October 31, 2011, inmate Keldric Clark closed the window next to Plaintiff's bed, and Plaintiff told Clark to stay away from his window. Thereafter, Clark allegedly mixed water and chemicals used to clean the bathrooms, heated the mixture in a microwave, and poured them on Plaintiff as he slept. Plaintiff allegedly suffered severe burns.

Plaintiff alleges that Correctional Officers L.C. Williams and Jalisa Franks should have removed the microwave and cleaning supplies from the prison zone prior to bedtime, but they failed to do so. Additionally, Plaintiff alleges that Williams and Franks were not attentive to the inmates. Plaintiff claims that Defendant King, as superintendent, failed to properly train Williams and Franks, and as a result, inmate Clark was able to harm Plaintiff.

Plaintiff's burns were treated at the University of South Alabama Medical Center. According to Plaintiff, after his burns were treated and he returned to SMCI, he complained to a nurse that his ear was buzzing and he was losing his balance. Allegedly, Defendant Dr. Woodall examined Plaintiff's ear and stated that he did not see anything wrong. Later, Plaintiff allegedly found discharge on his pillow and showed it to a nurse. According to Plaintiff, Dr. Woodall again examined Plaintiff and stated that the discharge was probably from the burns. Also, Dr. Woodall allegedly stated that he could not help Plaintiff and stated that Plaintiff would need to see a specialist. Approximately one month later, an otolaryngologist (ear, nose, and throat specialist), Dr. Michael Thompson, examined Plaintiff and stated that Plaintiff's eardrum was ruptured. Thereafter, Plaintiff allegedly underwent multiple surgeries on his ear.

Plaintiff claims that the surgeries and other damage to his ear could have been avoided had Dr. Woodall not been indifferent to his medical needs. As relief, Plaintiff seeks compensatory and punitive damages from Defendants King and Dr. Woodall. On May 12, 2015, Defendant King filed his Motion for Summary Judgment [51], and on May 15, 2015, Defendant Dr. Woodall filed his Motion for Summary Judgment [54].

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## ANALYSIS

### Ronald King

For a failure to train or supervise claim, a plaintiff must show "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or

supervise amounts to deliberate indifference" *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quotations and citation omitted). Deliberate indifference is a stringent standard of fault.[3] "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001). Generally, "[a] plaintiff must demonstrate at least a pattern of similar violations arising from training or supervising that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *E.A.F.F. v. U.S.*, 955 F. Supp. 2d 707, 745 (W.D. Tex. 2013).[4]

"[C]ulpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, —U.S.—, 131 S.Ct. 1350, 1359 (2011). A defendant's failure to train must reflect "a deliberate or conscious choice to endanger constitutional rights." *Estate of Davis*, 406 F.3d at 383. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training

---

[3] "There are no guarantees of safety and prison officials are not required to guarantee that no attack ever will occur." *Buentello v. State Classification Committee Members*, 2013 WL 3480740, at *3 (S.D. Tex. July 10, 2013) (citing *Adames v. Perez*, 331 F.3d 508, 514 (5th Cir. 2003)).

[4] The Supreme Court left open the possibility that, "in a narrow range of circumstances," a pattern of similar violations might not be necessary to show deliberate indifference. *See City of Canton v. Harris*, 489 U.S. 378 (1989). This exception, however, only exists "'where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train.'" *E.A.F.F.*, 955 F. Supp. 2d at 745-46 (quoting *Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008)). In *Canton*, the Supreme Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. 489 U.S. at 390, n. 10.

program that will cause violations of constitutional rights." *Connick*, 131 S.Ct. at 1360.

As previously mentioned, Defendant King filed his Motion for Summary Judgment [51] on May 12, 2015. Plaintiff failed to respond to the Motion. Plaintiff has failed to present anything other than conclusory allegations in support of his claims against Defendant King. Plaintiff has not presented any evidence regarding the training Defendant King's subordinate received or the steps Defendant King took to supervise his subordinates.

Even if Plaintiff had shown that Defendant King failed to adequately train or supervise his subordinates, Plaintiff has failed to present any evidence demonstrating that Defendant King was deliberately indifferent. Plaintiff has not demonstrated that Defendant King had notice that his training procedures or supervision were inadequate and likely to result in a constitutional violation.[5] Plaintiff made no attempt to show a pattern of Defendant King's subordinates failing to protect inmates. The record contains no evidence of similar attacks in the past that would have put Defendant King on notice additional training was necessary to avoid a constitutional violation.[6] Accordingly, Plaintiff's claims against Defendant King should be dismissed.[7]

---

[5] Plaintiff does not allege that Defendant King knew that inmate Clark posed a threat to Plaintiff.

[6] Additionally, Plaintiff's claims fall short of the hypothetical offered by the Supreme Court in *Canton v. Harris*, 489 U.S. 378 (1989) and are insufficient to form the basis for single-incident liability.

[7] Although Defendant King raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise establish a claim, then the defendant is entitled to dismissal on that basis." *Well v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999). Because the Plaintiff's claims are not cognizable as constitutional claims, it is not necessary to address the issue of whether Defendant King is entitled to qualified immunity.

*Dr. Ronald Woodall*

Plaintiff's allegations concerning Dr. Woodall amount to claims against him for violations of the Eighth Amendment.  "Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Deliberate indifference "is an extremely high standard to meet."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A plaintiff must show that a defendant's "response indicate[d] that the [defendant] subjectively intended that harm occur." *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001).

An official is not deliberately indifferent unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id*. at 838.  Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm."  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

The record demonstrates that after the alleged attack on October 31, 2011, Dr. Woodall sent Plaintiff to an emergency room. (Medical Records [57] at 188-89.) On November 7, 2011, after Plaintiff received treatment at the University of South Alabama Medical Center, he returned to SMCI, where Dr. Woodall examined him. ([57] at192-97.) Plaintiff was provided a pain reliever, an antibiotic, and antibiotic drops for his ear. ([57] at 195.)

On November 9, 2011, Plaintiff complained that his right ear was "hurting him severely," and his nurse gave him a pain reliever and stated that she would continue to monitor the situation. ([57] at 211.) On November 10, 2011, Plaintiff refused his antibiotic ear drops. ([57] at 212.) That same day, the medical staff informed Dr. Woodall about Plaintiff's complaint of pain in his ear, and Dr. Woodall stated that he would order additional pain reliever and instructed the staff to continue the antibiotic ear drops. ([57] at 213.) Later that day, Plaintiff stated that the "[p]ain medicine that was given earlier helped a lot." ([57] at 214.) On November 11, Plaintiff complained of not being able to hear out of his right ear. ([57] at 221.) Dr. Woodall continued providing Plaintiff medications. ([57] at 226.)

Medical professionals at SMCI routinely monitored Plaintiff until November 14, 2011, when he was taken to the University of South Alabama for a follow-up examination. ([57] at

192-234.) A doctor at the University noted that Plaintiff had a ruptured right ear drum, discontinued the antibiotic ear drops, and instructed Plaintiff to return in two weeks for a follow-up visit. ([57] at 151.) When Plaintiff returned to SMCI, Dr. Woodall examined Plaintiff's right ear. ([57] at 235.) Medical professionals continued to monitor Plaintiff, and on November 21, 2011, Dr. Woodall requested that Plaintiff be referred to an otolaryngologist because the rupture had not healed. ([57] at 275-76; Dr. Woodall Affidavit [54-3] at 2.)

On November 28, 2011, Plaintiff returned to the University Medical Center, where he was again prescribed antibiotic ear drops. ([57] at 149-50, 314.) The next day, Plaintiff refused his ear drops. ([57] at 321-23.) Medical professionals continued to monitor Plaintiff, and on December 5, 2015, Dr. Woodall inquired about Plaintiff's otolaryngologist referral. ([57] at 360.) Thereafter, Plaintiff received continuous treatment. ([57] at 360-514.)

On February 6, 2012, an otolaryngologist, Dr. Thompson, examined Plaintiff. ([57] at 17-19, 514.) Dr. Thompson discontinued the ear drops and recommended surgery on the ear. ([57] at 19.) Dr. Thompson saw Plaintiff again on February 22, 2012. ([57] at 20.) Dr. Thompson performed surgery on Plaintiff's ear on February 29, 2015, and again on June 20, 2012. ([57] at 21-52.)

In order to succeed on his claims, Plaintiff must demonstrate that Dr. Woodall was deliberately indifferent to his serious medical needs. *See Davidson*, 91 Fed. App'x. at 964. Plaintiff has failed to make this showing. The record demonstrates that, during the time between the alleged attack and the initial surgery on his right ear, Plaintiff regularly received medical treatment from Dr. Woodall, other medical processionals at SMCI, and outside medical professionals. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that

"[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmates' allegations of deliberate indifference."). Based on the evidence before the Court, Dr. Woodall never refused to treat Plaintiff, ignored his complains, or denied him medical treatment.

To the contrary, Dr. Woodall and other medical professionals at SMCI immediately assessed Plaintiff, consistently treated him, scheduled him multiple appointments with an outside specialist, provided him multiple medications, and adjusted those medications when necessary. While Dr. Woodall's initial assessment of Plaintiff's ear is uncertain, the record demonstrates that Dr. Woodall immediately began treating Plaintiff with ear drops and pain relievers. This was the same treatment prescribed by a doctor at the University of South Alabama Medical Center after Plaintiff was diagnosed with a ruptured ear drum. ([57] at 149-50, 314.) The record also demonstrates that Dr. Woodall saw to it that Plaintiff was treated by an otolaryngologist. ([57] at 275-76, 360; [54-3] at 2.)

Plaintiff disagrees with Dr. Woodall's course of treatment, but "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton*, 122 F.3d at 292. Even if Dr. Woodall were negligent in his assessment and treatment of Plaintiff, such does not rise to the level of a constitutional violation. *See See Daniels*, 474 U.S. at 333-34; *McMahon*, 583 F.2d at 174; and *Davidson*, 91 Fed. App'x at 965 (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)). The record does not support a finding that Dr. Woodall was deliberately indifferent to Plaintiff's serious medical needs. Accordingly, Plaintiff's claims against Dr. Woodall should be dismissed.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned recommends that:

1. Defendant Ronald King's Motion for Summary Judgment [51] be GRANTED,

2. Defendant Dr. Ronald Woodall's Motion for Summary Judgment [54] be GRANTED, and

3. This action be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 22nd day of September, 2015.

s/ Michael T. Parker
United States Magistrate Judge